MICHAEL F. RAM (SBN 104805)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone:   (415) 358-6913
Facsimile:    (415) 358-6923
mram@ForThePeople.com

JEAN SUTTON MARTIN
(*Pro Hac Vice application forthcoming*)
PATRICK BARTHLE
(*Pro Hac Vice application forthcoming*)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 559-4908
Facsimile: (813) 222-4795
jeanmartin@ForThePeople.com
pbarthle@ForThePeople.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMID SHALVIRI, On Behalf of Himself and All Others Similarly Situated, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **NEGLIGENCE, BREACH OF IMPLIED CONTRACT, INVASION OF PRIVACY,  VIOLATIONS OF CALIFORNIA'S CONFIDENTIALITY OF MEDICAL INFORMATION ACT CAL. CIV. CODE § 56, ET SEQ.** |
| v. | |
| SUPER CARE, INC. d/b/a SUPERCARE HEALTH, INC. Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

## INTRODUCTION

1.     Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information and protected health information ("PHI") that Defendant's patients entrusted to it, including, without limitation, name, address, date of birth, hospital or medical group, patient account number, medical record number, health insurance information, testing/diagnostic/treatment information, other health-related information, claim information, and Social Security number and/or driver's license number maintained by SuperCare (collectively, "personally identifiable information" or "PII").[1]

2.     SuperCare Health, Inc. is a provider of home respiratory services and certain durable medical equipment, including oxygen therapy, inhalation therapies, and sleep apnea treatment. According to Defendant's website, Defendant operates over 23 locations throughout California, Nevada, New Mexico, and Oregon and provides services in Arizona and Texas.[2]

3.     Defendant's "Notice of Privacy Practices" ("Privacy Policy"),[3] posted on its website, revisions effective November 15, 2021, describes how patients' medical information may be used and disclosed and how patients can get access to this information. The Privacy Policy lists situations under which SuperCare may disclose PHI of its patients without written authorization – none of which are applicable here.

4.     Under "Privacy Obligations," the Privacy Policy states that Defendant is "committed to protecting your personal health information" and that Defendant is required by law to:

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 CFR § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on their face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security number, passport number, driver's license number, financial account number).
[2] https://supercarehealth.com/homepage/contact-page/locations/ (last visited Apr. 11, 2022).
[3] Exhibit 1 ("Privacy Policy").

CLASS ACTION COMPLAINT            1

maintain the privacy of your health information ('Protected Health Information' or 'PHI') and to provide you with this Notice of legal duties and privacy practices with respect to your Protected Health Information. When SuperCare uses or discloses your Protected Health Information, it is required to abide by the terms of this Notice (or other notice in effect at the time of the use or disclosure).[4]

5.      According to Defendant's posted Notice of Data Security Incident ("Website Notice"),[5] Defendant discovered unauthorized activity on its systems on July 27, 2021; Defendant then discovered that an unknown unauthorized party had access to its systems from July 23, 2021 to July 27, 2021 (the "Data Breach").[6]

6.      According to Defendant, the "unauthorized activity" may have compromised the unsecured PHI of at least 318,379 current and former patients of Defendant.[7]

7.      On or around March 28, 2022, more than eight months after the Data Breach began, Defendant began notifying the Department of Health and Human Services and various states Attorneys General of the Data Breach.

8.      In letters dated March 25, 2022, Defendant began notifying Plaintiff and Class Members of the Data Breach.

9.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Defendant assumed legal and equitable duties to those individuals.

10.     The exposed PII and PHI of Plaintiff and Class Members can now be sold on the dark web.  Hackers can access and then offer for sale the unencrypted,

---

[4] *Id.*

[5] Exhibit 2 ("Website Notice").

[6] Ex. 1; *see* U.S. DEP'T OF HEALTH & HUMAN SERVICES, OFFICE FOR CIVIL RIGHTS, *Breach Portal, available at* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited Apr. 11, 2022).

[7] Exhibit 3 (sample *Notice of Data Breach* filed with California Attorney General).

unredacted PII and PHI to criminals.  Plaintiff and Class Members face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

11.    This PII and PHI was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII and PHI of Plaintiff and Class Members.

12.    Plaintiff brings this action on behalf of all persons whose PII and PHI was compromised as a result of Defendant's failure to: (i) adequately protect the PII and PHI of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of its inadequate information security practices; and (iii) avoid sharing the PII and PHI of Plaintiff and Class Members without adequate safeguards.  Defendant's conduct amounts to negligence and violates federal and state statutes.

13.    Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII and PHI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and significantly (iv) the continued and certainly an increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI.

14.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII and PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal

use. As the result, the PII and PHI of Plaintiff and Class Members was actually or potentially compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## I. PARTIES

15.   Plaintiff Hamid Shalviri is a citizen of California residing in Los Angeles County, California.

16.   Defendant SuperCare Health, Inc. is a California corporation with its principal place of business in Downey, California. Defendant is headquartered at 8345 Firestone Blvd, Suite 210, Downey, CA 90241.

17.   The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff.  Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

18.   All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## II. JURISDICTION AND VENUE

19.   This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant.

20.   Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendant conducts its affairs in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in or emanated from this District.

21.   This Court has personal jurisdiction over Defendant because its

principal place of business is in California. Additionally, Defendant is subject to specific personal jurisdiction in this District because a substantial part of the events and conduct giving rise to Plaintiff's and the Class's claims occurred in this District. Defendant SuperCare Health, Inc. is a California corporation with its principal place of business in Downey, California. Defendant is headquartered at 8345 Firestone Blvd, Suite 210, Downey, CA 90241.

### III. FACTUAL ALLEGATIONS

***Background***

22.    SuperCare Health, Inc. is a provider of home respiratory services and certain durable medical equipment, including oxygen therapy, inhalation therapies, and sleep apnea treatment. Defendant provides post-acute care respiratory services including home care to high-risk respiratory patients.[8] SuperCare provides a wide range of services to patients, allowing them to arrange telehealth visits, fill prescriptions online, and purchase medical equipment through its website.[9] SuperCare also works with physicians to identify hospital patients in need of a high level of care and helps them transition to home care.[10]

23.    According to Defendant's website, Defendant operates over 23 locations throughout California, Nevada, New Mexico, and Oregon and provides services in Arizona and Texas.[11]

24.    The company is based in Downey, California and employs approximately 350 people.[12] Annually, SuperCare Health generates roughly $23 million in revenue.[13]

---

[8] *Data Breach Alert: SuperCare Health*, JDSUPRA.COM (Apr. 1, 2022), https://www.jdsupra.com/legalnews/data-breach-alert-supercare-health-3076679/ (last visited Apr. 11, 2022).
[9] *Id.*
[10] *Id.*
[11] https://supercarehealth.com/homepage/contact-page/locations/ (last visited Apr. 11, 2022).
[12] *Data Breach Alert: SuperCare Health*, JDSUPRA.COM (Apr. 1, 2022), https://www.jdsupra.com/legalnews/data-breach-alert-supercare-health-3076679/ (last visited Apr. 11, 2022).
[13] *Id.*

CLASS ACTION COMPLAINT                  5

25.     Defendant's Privacy Policy[14] posted on its website, revisions effective November 15, 2021, describes how medical information about its patients may be used and disclosed and how patients can get access to this information.

26.     The Privacy Policy lists situations under which SuperCare may disclose PHI and PII of its patients without written authorization – none of which are applicable here.[15]

27.     Under "Privacy Obligations," the Privacy Policy states that Defendant is "committed to protecting your personal health information" and that Defendant is required by law to:

> maintain the privacy of your health information ('Protected Health Information' or 'PHI') and to provide you with this Notice of legal duties and privacy practices with respect to your Protected Health Information. When SuperCare uses or discloses your Protected Health Information, it is required to abide by the terms of this Notice (or other notice in effect at the time of the use or disclosure).[16]

28.     As a condition of receiving healthcare services from Defendant, Plaintiff and Class Members were required to provide their PHI and PII to Defendant.

29.     Defendant collected and stored some of Plaintiff's and Class Members' most sensitive and confidential personal and medical information, including, without limitation, name, address, date of birth, hospital or medical group, patient account number, medical record number, health insurance information, testing/diagnostic/treatment information, other health-related information, claim information, and Social Security number and/or driver's license number. This

---

[14] Ex. 1.
[15] *Id.*
[16] *Id.*

includes information that is static, does not change, and can be used to commit myriad financial crimes.

30.     Plaintiff and Class Members relied on this sophisticated Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII and PHI.

31.     Defendant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII and PHI from involuntary disclosure to third parties.

### The Data Breach

32.     On or about July 27, 2021, SuperCare discovered unauthorized activity on its internal computer systems. Upon discovering this activity, SuperCare "immediately began containment, mitigation, and restoration efforts to terminate the activity and to secure [its] network, systems, and data."[17] Defendant's forensic investigation revealed that an unknown party had access to Defendant's systems between July 23, 2021 and July 27, 2021 (the "Data Breach").

33.     Defendant concluded its forensic investigation into the Data Breach on February 4, 2022, during which it "worked diligently to identify the potentially affected files and their contents."[18]

34.     On or about March 25, 2022, Defendant posted its Website Notice, which states, in part:

> SuperCare Health ("SuperCare") has announced a data security incident involving personal information relating to its patients, patients/members of its partner organizations and others. We sent notification of this incident to potentially impacted individuals and have provided resources to assist them.

---

[17] Ex. 1.
[18] Ex. 2.

**What Happened**: On July 27, 2021, we discovered unauthorized activity on our systems. In response, we immediately began containment, mitigation, and restoration efforts to terminate the activity and to secure our network, systems, and data. In addition, we retained independent cybersecurity experts to conduct a forensic investigation into the incident and assist us in determining what happened.

The forensic investigation revealed that an unknown party had access to certain systems on our network from July 23, 2021 to July 27, 2021. Based on that information, we worked diligently to identify the potentially affected files and their contents. On February 4, 2022, we determined that the potentially impacted files contained some information relating to certain patients. Please note that to date, we have no reason to believe that any information was published, shared, or misused as a result of this incident.

**What Information Was Involved**: The data involved varies depending on the individual but may include: name, address, date of birth, hospital or medical group, patient account number, medical record number, health insurance information, testing/diagnostic/treatment information, other health-related information, and claim information. For a small subset of individuals, their Social Security number and/or driver's license number may have

been contained in the impacted files.

**What We Are Doing**: On March 25, 2022, we notified individuals whose information was involved in the incident. In addition, we implemented additional security measures to protect our digital environment and minimize the likelihood of future incidents. We also reported the incident to the Federal Bureau of Investigation and will cooperate to help identify and prosecute those responsible.

**What You Can Do**: As we have stated, we are not aware of any misuse of the impacted information. The notification letters that were sent to potentially affected individuals include resources and steps that they can take to protect their personal and protected health information. They are provided below as well.

The privacy and security of your information is a top priority for SuperCare Health. We take this incident very seriously and we regret any worry or inconvenience this may cause you.[19]

35.    Defendant admitted in the Website Notice that an unauthorized party actually or potentially compromised sensitive information about Plaintiff and Class Members, including name, address, date of birth, hospital or medical group, patient account number, medical record number, health insurance information, testing/diagnostic/treatment information, other health-related information, claim information, Social Security number and/or driver's license number, information maintained by SuperCare.

[19] Ex. 2.

36.     On or about March 25, 2022, Defendant notified the Office of the Vermont Attorney General of the Data Breach.[20] On or about March 26, 2022, Defendant notified the Massachusetts Office of Consumer Affairs and Business Regulation of the Data Breach.[21] On or about March 28, 2022, Defendant notified the California Attorney General of the Data Breach.  Defendant also provided the California, Massachusetts, and Vermont Attorneys General with letters and/or "sample" notices of the Data Breach.[22]

37.     On or about March 25, 2022, Defendant sent Plaintiff and Class Members a Notice of Data Breach.[23]

38.     In response to the Data Breach, Defendant claims that it "implemented additional security measures to protect our digital environment and minimize the likelihood of future incidents."[24]  However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their information remains protected.

39.     Plaintiff's and Class Members' unencrypted information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII and/or PHI for targeted marketing without the approval of Plaintiff and Class Members.  Unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

---

[20] *SuperCare Health Data Breach Notice to Consumers*, OFF. OF THE VT. ATT'Y GEN. (Mar. 25, 2022), *available at* https://ago.vermont.gov/blog/2022/03/25/supercare-health-data-breach-notice-to-consumers/?utm_source=rss&utm_medium=rss&utm_campaign=supercare-health-data-breach-notice-to-consumers.

[21] *Data Breach Notification Letter, SuperCare*, MASS. OFF. OF CONSUMER AFF. & BUS. REG. (Mar. 26, 2022), *available at* https://www.mass.gov/doc/assigned-data-beach-number-26247-super-care-inc-dba-supercare-health/download (last visited Apr. 12, 2022).

[22] Exhibit 3 (Letter and sample *Notice of Data Breach* filed with California Attorney General); Exhibit 4 (Sample *Notice of Data Breach* filed with Vermont Attorney General); Exhibit 5 (Sample *Notice of Data Breach* filed with Massachusetts Attorney General) .

[23] Exhibit 6 (Plaintiff Shalviri's *Notice of Data Breach Letter*).

[24] Ex. 2 at 1.

CLASS ACTION COMPLAINT                    10

40.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing their PII and PHI to be exposed.

***Defendant Acquires, Collects and Stores Plaintiff's and Class Members' PII and PHI.***

41.    Defendant acquired, collected, and stored Plaintiff's and Class Members' PII and PHI.

42.    As a condition of its relationships with Plaintiff and Class Members, Defendant required that Plaintiff and Class Members entrust Defendant with highly confidential PII and PHI.

43.    By obtaining, collecting, and storing the PII and PHI of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII and PHI from disclosure.

44.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Securing PII and Preventing Breaches***

45.    Defendant could have prevented this Data Breach by properly securing and encrypting the PII and PHI of Plaintiff and Class Members.  Alternatively, Defendant could have destroyed the data, especially years-old data from former patients.

46.    Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

47.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

CLASS ACTION COMPLAINT          11

48.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[25] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[26]

49.    The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe.  Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

### Value of Personal Identifiable Information

50.    The PII of individuals remains of high value to criminals, as evidenced by the prices criminals will pay for that PII on the dark web. Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[27] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[28] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[29]

51.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of

---

[25] 17 C.F.R. § 248.201 (2013).

[26] *Id.*

[27] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:  https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Apr. 11, 2022).

[28] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:  https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Apr. 11, 2022).

[29] *In the Dark*, VPNOverview, 2019, *available at:* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Apr. 11, 2022).

fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[30]

52.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

53.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[31]

---

[30] SOCIAL SECURITY ADMINISTRATION, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Apr. 11, 2022).

[31] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Apr. 11, 2022).

54.     Further, there is a market for Plaintiff's and Class Members PHI, and the stolen PII and PHI has inherent value. Sensitive healthcare data can sell for as much as $363 per record according to the Infosec Institute.[32]

55.     PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale. Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

56.     Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[33]

57.     Similarly, the FBI Cyber Division, in an April 8, 2014 Private Industry Notification, advised:

> Cyber criminals are selling [medical] information on the

---

[32] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), available at: https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Apr. 11, 2022).

[33] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News (Feb. 7, 2014) available at: https://khn.org/news/rise-of-indentity-theft/ (last visited Apr. 11, 2022).

black market at a rate of $50 for each partial EHR, compared to $1 for a stolen social security number or credit card number. EHR can then be used to file fraudulent insurance claims, obtain prescription medication, and advance identity theft. EHR theft is also more difficult to detect, taking almost twice as long as normal identity theft.[34]

58.     Based on the foregoing, the information actually or potentially compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information actually or potentially compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, Social Security number, medical records, and potentially date of birth.

59.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[35]

60.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

61.     The PII of Plaintiff and Class Members was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the PII for

---

[34] FBI Cyber Division, Private Industry Notification, "(U) Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain," Apr. 8, 2014, available at:http://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf (last accessed Apr. 11, 2022).

[35] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Apr. 11, 2022).

that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

62. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[36]

63. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members, including Social Security numbers and/or dates of birth, and of the foreseeable consequences that would occur if PII and PHI were compromised, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members a result.

64. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

65. Defendant was, or should have been, fully aware of the unique type and the significant volume of data stored on and/or shared on its system, amounting to more than 300,000 individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the

---

[36] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/products/gao-07-737 (last visited Apr. 11, 2022).

unencrypted data.

66.     To date, Defendant has offered affected individuals only one to two years of identity theft protection services through a single provider, IDX. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII and PHI at issue here.

67.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiff and Class Members.

### *Defendant Failed to Comply with FTC Guidelines*

68.     Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

69.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[37]

70.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[38] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand

---

[37] Federal Trade Commission, *Start with Security: A Guide for Business*, *available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Apr. 11, 2022).

[38] Federal Trade Commission, *Protecting Personal Information: A Guide for Business, available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited Apr. 11, 2022).

CLASS ACTION COMPLAINT          17

their network's vulnerabilities; and implement policies to correct any security problems.

71.   The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[39]

72.   The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73.   Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C.§ 45.

74.   Defendant was at all times fully aware of its obligation to protect the PII and PHI of patients because of its status as a healthcare provider and medical equipment specialist. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### *Defendant's Conduct Violates HIPAA*

75.   Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS has subsequently promulgated five rules under authority of the

---

[39] FTC, *Start with Security*, *supra*.

Administrative Simplification provisions of HIPAA.

76.    Defendant's Data Breach resulted from a combination of insufficiencies that indicate Defendant failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from Defendant's Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures in place to protect Plaintiff and Class Members' PII and PHI. Second, Defendant's Data Breach could have been prevented if Defendant implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PII and PHI when it was no longer necessary and/or had honored its obligations to its patients.

77.    Defendant's security failures also include, but are not limited to:

a.    Failing to maintain an adequate data security system to prevent data loss;

b.    Failing to mitigate the risks of a data breach and loss of data;

c.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.    Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

g. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

h. Failing to protect against any reasonably-anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

i. Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 CFR 164.306(a)(94);

j. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502,et seq.; and

k. Retaining information past a recognized purpose and not deleting it.

78. The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[40]

79. Because Defendant has failed to comply with industry standards, while monetary relief may cure some of Plaintiff and Class Members' injuries, injunctive relief is necessary to ensure Defendant's approach to information security is adequate and appropriate. Defendant still maintains the protected health information and other PII of Plaintiff and Class Members; and without the supervision of the Court via injunctive relief, Plaintiff and Class Members' protected health information and other PII remains at risk of subsequent Data Breaches.

---

[40] Breach Notification Rule, U.S. DEP'T OF HEALTH & HUMAN SERVICES, *available at* hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added) (last visited Apr. 11, 2022).

### *Plaintiff Hamid Shalviri's Experience*

80.     On or around February 2020, Plaintiff Shalviri utilized SuperCare to obtain a respiratory medical device and associated healthcare services at the direction of his physician. As a condition of receiving these services, Plaintiff was required to provide his sensitive information, including his PII and PHI.

81.     Upon information and belief, Plaintiff Shalviri's PHI and PII was in Defendant's computer systems during the Data Breach and remains in Defendant's possession.

82.     On or around March 28, 2022, Plaintiff received a Notice of Data Breach from Defendant.[41]

83.     As a result of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent on the telephone and sorting through his unsolicited emails, verifying the legitimacy of the Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

84.     Additionally, Plaintiff is very careful about sharing his PII and PHI. He has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

85.     Plaintiff stores any documents containing his PII in a safe and secure location. Moreover, he diligently chooses unique usernames and passwords for his few online accounts.

86.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that Plaintiff entrusted to Defendant for the purpose of obtaining healthcare from Defendant, which was actually or potentially compromised in and as a result of the Data Breach.

87.     Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy. Plaintiff has also suffered an increase in spam calls, texts, and emails.

---

[41] Ex. 6.

These spam calls/texts/emails and phishing attempts have become so frequent and incessant that Plaintiff has considered changing his phone number.

88.    Plaintiff has suffered injury arising from the present and continuing risk of fraud, identity theft, and misuse resulting from his PII and PHI, especially his Social Security number, in combination with his name, being placed in the hands of unauthorized third parties and possibly criminals.

89.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remain backed up in Defendant's possession, is protected and safeguarded from future breaches.

## IV. CLASS ALLEGATIONS

90.    Plaintiff seeks relief on behalf of himself and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a nationwide class defined as follows:

> **All individuals residing in the United States whose PII was actually or potentially compromised during the data breach referenced in the Notice of Data Breach that Defendant sent to Plaintiff and others on or around March 25, 2022 (the "Nationwide Class").**

91.    In the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate subclass, defined as follows:

> **All individuals residing in California whose PII was actually or potentially compromised during the data breach referenced in the Notice of Data Breach that Defendant sent to Plaintiff and others on or around March 25, 2022 (the "California Class").**

92.    Excluded from the Nationwide Class and the California Class (collectively the "Classes") are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any

entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

93.    Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

94.    The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

95.    **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed Class Members include many individuals, there is significant risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the Defendant. For example, injunctive relief may be entered in multiple cases, but the ordered relief may vary, causing Defendant to have to choose between differing means of upgrading their data security practices and choosing the court order with which they will comply. Class action status is also warranted because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

96.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are believed to be so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of individuals affected in the Data Breach is unknown, upon information and belief, it is over 300,000.

97.    **Commonality and Predominance. Fed. R. Civ. P. 23(a)(2) and (b)(3).**    Consistent    with    Rule    23(a)(2)    and    with    23(b)(3)'s    predominance

requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class Members. The common questions include:

    a.  Whether Defendant had a duty to protect its patients' sensitive PII and PHI;

    b.  Whether Defendant knew or should have known of the susceptibility of its systems to a data breach;

    c.  Whether Defendant's security measures to protect its systems were reasonable in light of best practices recommended by data security experts;

    d.  Whether Defendant was negligent in failing to implement reasonable and adequate security procedures and practices;

    e.  Whether Defendant's failure to implement adequate data security measures allowed the breach of its data systems to occur;

    f.  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the unlawful exposure of the Plaintiff's and Class Members' PII and PHI;

    g.  Whether Plaintiff and Class Members were injured and suffered damages or other losses because of Defendant's failure to reasonably protect their systems and data network; and

    h.  Whether Plaintiff and Class members are entitled to relief.

98. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of other Class Members. Plaintiff's damages and injuries are akin to other Class Members, and Plaintiff seeks relief consistent with the relief sought by the Class.

99. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because he is a member of the Class he seeks to represent; is committed to pursuing this matter against Defendant

CLASS ACTION COMPLAINT    24

to obtain relief for the Class; and has no conflicts of interest with the Class. Moreover, Plaintiff's attorneys are competent and experienced in litigating class actions, including privacy litigation of this kind. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

100.   **Superiority. Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

101.   **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

102.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

     a.   Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII

and PHI;

b.  Whether Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

c.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d.  Whether Defendant failed to take commercially reasonable steps to safeguard PII and PHI;

e.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the data breach;

f.  Whether Defendant failed to comply with its statutory and regulatory obligations; and,

g.  Whether Plaintiff and the proposed Class are entitled to compensation as a result of Defendant's actions.

103.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names of those affected by the Data Breach. Using this information, Class Members can be identified and ascertained for the purpose of providing notice.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

104.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 103.

105.    Plaintiff and the Nationwide Class provided and entrusted Defendant with certain PII and PHI, including, without limitation, name, address, date of birth, hospital or medical group, patient account number, medical record number, health insurance information, testing/diagnostic/treatment information, other health-related information, claim information, and Social Security number and/or driver's license number.

---

CLASS ACTION COMPLAINT                    26

106.    Plaintiff and the Nationwide Class entrusted their PII and PHI to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII and PHI for business purposes only, and/or not disclose their PII and PHI to unauthorized third parties.

107.    Defendant has full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiff and the Nationwide Class could and would suffer if the PII and PHI were wrongfully disclosed.

108.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII and PHI of Plaintiff and the Nationwide Class involved an unreasonable risk of harm to Plaintiff and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

109.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII and PHI of Plaintiff and the Nationwide Class in Defendant's possession was adequately secured and protected.

110.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII and PHI it was no longer required to retain pursuant to regulations, including that of former customers or patients.

111.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII and PHI of Plaintiff and the Nationwide Class.

112.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Nationwide Class.   That special relationship arose because Plaintiff and the Nationwide Class entrusted Defendant with their confidential PII and PHI, a necessary part of their relationships with Defendant.

CLASS ACTION COMPLAINT          27

113.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Nationwide Class.

114.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and Defendant's previous data breach, just last year.

115.    Plaintiff and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiff and the Nationwide Class, the critical importance of providing adequate security of that PII and PHI, and the necessity for encrypting PII and PHI stored on Defendant's systems.

116.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.  Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII and PHI of Plaintiff and the Nationwide Class, including basic encryption techniques freely available to Defendant.

117.    Plaintiff and the Nationwide Class had no ability to protect their PII and PHI that was in, and possibly remains in, Defendant's possession.

118.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Nationwide Class as a result of the Data Breach.

119.    Defendant had and continues to have a duty to adequately disclose that the PII and PHI of Plaintiff and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Nationwide Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII and PHI by third parties.

120.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII and PHI of Plaintiff and the Nationwide Class.

121.    Defendant has admitted that the PII and PHI of Plaintiff and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

122.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Nationwide Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII and PHI of Plaintiff and the Nationwide Class during the time the PII and PHI was within Defendant's possession or control.

123.    Defendant improperly and inadequately safeguarded the PII and PHI of Plaintiff and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

124.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII and PHI of Plaintiff and the Nationwide Class in the face of increased risk of theft.

125.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of their PII and PHI.

126.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove PII and PHI it was no longer required to retain pursuant to regulations.

127.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Nationwide Class the existence and scope of the Data Breach.

128.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the PII and PHI of Plaintiff and the Nationwide Class would not have been actually or potentially compromised.

129.    There is a close causal connection between Defendant's failure to

implement security measures to protect the PII and PHI of Plaintiff and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class. The PII and PHI of Plaintiff and the Nationwide Class was actually or potentially compromised as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures.

130. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII and PHI. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

131. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Nationwide Class.

132. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

133. Plaintiff and the Nationwide Class are within the class of persons that the FTC Act was intended to protect.

134. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Nationwide Class.

135. Defendant's violation of HIPAA also independently constitutes negligence *per se*.

136. HIPAA privacy laws were enacted with the objective of protecting the

confidentiality of patients' healthcare information and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

137.    Plaintiff and the Nationwide Class are within the class of persons that HIPAA privacy laws were intended to protect.

138.    The harm that occurred as a result of the Data Breach is the type of harm HIPAA privacy laws were intended to guard against.

139.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI of Plaintiff and the Nationwide Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Nationwide Class.

140.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

141.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII and PHI, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession.

142.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Nationwide Class are entitled to and demand actual, consequential, and nominal damages.

## <u>SECOND CAUSE OF ACTION</u>
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Nationwide Class)

143.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 103.

144.    Defendant required Plaintiff and the Nationwide Class to provide and entrust their PII and PHI, including, without limitation, name, address, date of birth, hospital or medical group, patient account number, medical record number, health insurance information, testing/diagnostic/treatment information, other health-related information, claim information, and Social Security number and/or driver's license number as a condition of obtaining medical care from Defendant.

145.    Defendant's "Privacy Policy" provides, in part, that Defendant is "committed to protecting your personal health information" and that Defendant is required by law to:

maintain the privacy of your health information

('Protected Health Information' or 'PHI') and to provide

you with this Notice of legal duties and privacy practices with respect to your Protected Health Information. When SuperCare uses or discloses your Protected Health Information, it is required to abide by the terms of this Notice (or other notice in effect at the time of the use or disclosure).[42]

146.    Defendant solicited and invited Plaintiff and Class Members to provide their PII and PHI as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PII and PHI to Defendant.

147.    As a condition of obtaining care from Defendant, Plaintiff and the Nationwide Class provided and entrusted their personal information. In so doing, Plaintiff the Nationwide Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Nationwide Class if their data had been breached and compromised or stolen.

148.    A meeting of the minds occurred when Plaintiff and the Class Members agreed to, and did, provide their PII and PHI to Defendant, in exchange for, amongst other things, the protection of their PII and PHI.

149.    Plaintiff and the Nationwide Class fully performed their obligations under the implied contracts with Defendant.

150.    Defendant breached the implied contracts it made with Plaintiff and the Nationwide Class by failing to safeguard and protect their personal and financial information and by failing to provide timely and accurate notice to them that personal and financial information was compromised as a result of the data breach.

151.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Nationwide Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes,

---

[42] Ex. 1.

fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

152.    As a result of Defendant's breach of implied contract, Plaintiff and the Nationwide Class are entitled to and demand actual, consequential, and nominal damages.

### THIRD CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Nationwide Class)**

153.    Plaintiff and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 103.

154.    Plaintiff and the Nationwide Class had a legitimate expectation of privacy to their PII and PHI and were entitled to the protection of this information against disclosure to unauthorized third parties.

155.    Defendant owed a duty to its current and former patients, including Plaintiff and the Nationwide Class, to keep their PII and PHI contained as a part thereof, confidential.

156.    Defendant failed to protect and actually or potentially released to unknown and unauthorized third parties the PII and PHI of Plaintiff and the Nationwide Class.

157.    Defendant allowed unauthorized and unknown third parties to actually or potentially access and examine of the PII and PHI of Plaintiff and the Nationwide Class, by way of Defendant's failure to protect the PII and PHI.

158.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII and PHI of Plaintiff and the Nationwide Class is highly offensive to a reasonable person.

159.    The intrusion was into a place or thing, which was private and is entitled to be private.  Plaintiff and the Nationwide Class disclosed their PII and PHI to Defendant as part of Plaintiff's and the Nationwide Class's relationships with Defendant, but privately with an intention that the PII and PHI would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Nationwide Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

160.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and the Nationwide Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

161.    Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

162.    Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Nationwide Class.

163.    As a proximate result of the above acts and omissions of Defendant, the PII and PHI of Plaintiff and the Nationwide Class was accessed by to third parties without authorization, causing Plaintiff and the Nationwide Class to suffer damages.

164.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Nationwide Class in that the PII and PHI maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Nationwide Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Nationwide Class.

## **FOURTH CAUSE OF ACTION**

CLASS ACTION COMPLAINT                    35

**Violations of California's Confidentiality of Medical Information Act ("CMIA"),**
**Cal. Civ. Code § 56, *et seq.***
**(On behalf of Plaintiff and the California Class)**

165.    Plaintiff and the California Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 103.

166.    Defendant is a "provider of health care" as defined in Cal. Civ. Code § 56.05(a).[43]

167.    Defendant created, maintained, preserved, and stored Plaintiff's and the California Class's "medical information," as defined under Cal. Civ. Code § 56.05(j), which was subject to the Data Breach.

168.    Plaintiff and the California Class are "patients" as defined by Cal. Civ. Code § 56.05(k).

169.    As a provider of health care, Defendant owed a duty to preserve the confidentiality of Plaintiff's and members of the California Class's medical information and to not allow Plaintiff's and members of the California Class's medical information to be released and viewed by unauthorized persons.

170.    Defendant breached its duty owed to Plaintiff and the members of the California Class by failing to implement fair, reasonable, or adequate computer systems and data security policies to safeguard Plaintiff's and California Class Members' medical information, and by allowing that PHI to be released and viewed by unauthorized persons.

171.    In violation of the first sentence of Cal. Civ. Code § 65.101(a), Defendant created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information (including Plaintiff's and California Class Members' PHI (including medical information)) in a manner that failed to preserve and breached

---

[43] At all relevant times, Defendant was healthcare provider for the purposes of this cause of action because it had the "purpose of maintaining medical information . . . in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or his information, or for the diagnosis or treatment of the individual." Cal. Civ. Code § 56.06(a).

the confidentiality of the information contained therein. The resulting unauthorized access and potential acquisition of Plaintiff's and California Class Members' PHI to unauthorized hackers during the Data Breach was an affirmative communicative act in violation of violation of Cal. Civ. Code § 56.101(a). Plaintiff's and California Class Members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.101(a).

172.    In violation of the second sentence of Cal. Civ. Code § 56.101(a), Defendant negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information (including Plaintiff's and California Class Members' PHI (including medical information)). The resulting unauthorized access and potential acquisition of Plaintiff's and California Class Members' PHI to unauthorized hackers during the Data Breach was an affirmative communicative act in violation of violation of Cal. Civ. Code § 56.101(a). Plaintiff's and California Class Members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.101(a).

173.    Plaintiff's and California Class Members' PHI that was subject to the Data Breach included "electronic medical records" or "electronic health records" as referenced by Cal. Civ. Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

174.    In violation of Cal. Civ. Code § 56.101(b)(1)(A), Defendant's electronic health record system or electronic medical record system failed to protect and preserve the integrity of electronic medical information (including Plaintiff's and California Class Members' PHI). The resulting unauthorized access and potential acquisition of Plaintiff's and California Class Members' PHI to and/or by unauthorized hackers during the Data Breach was an affirmative communicative act in violation of violation of Cal. Civ. Code § 56.101(b)(1)(A). Plaintiff's and California Class Members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.101(b)(1)(A).

175.    In violation of Cal. Civ. Code § 56.101(b)(1)(B), Defendant's electronic health record system or electronic medical record system failed to

automatically record and preserve any actual or potential change or deletion of any electronically stored medical information (including Plaintiff's and California Class Members' PHI).

176.    In violation of Cal. Civ. Code § 56.101(b)(1)(B), Defendant's electronic health record system or electronic medical record system failed to record the identity of persons who actually or potentially accessed and changed medical information (including Plaintiff's and California Class Members' PHI), failed to record the date and time medical information was accessed (including Plaintiff's and California Class Members' PHI) and failed to record any actual or potential changes that were made to medical information (including Plaintiff's and California Class Members' PHI).

177.    In violation of Cal. Civ. Code § 56.36(b), Defendant negligently released confidential information or records concerning Plaintiff's and California Class Members' PHI. This negligent release of Plaintiff's and California Class Members' PHI to unauthorized hackers during the Data Breach was an affirmative communicative act in violation of Cal. Civ. Code § 56.36(b). Plaintiff's and California Class Members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.36(b).

178.    In violation of Cal. Civ. Code § 56.10(e), Defendant disclosed Plaintiff's and California Class Members' PHI to persons or entities not engaged in providing direct health care services to Plaintiff's or California Class Members or their providers of health care or health care service plans or insurers or self-insured employers.

179.    The foregoing violations of CMIA resulted from Defendant's affirmative actions, and Defendant knew or should have known it had inadequate computer systems and data security practices to safeguard such information. Defendant knew or should have known of the risks inherent in collecting and storing the protected medical information of Plaintiff and members of the California Class.

180.    The injury and harm Plaintiff and members of the California Class suffered was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and its breach would cause Plaintiff and members of the California Class to suffer the foreseeable harms associated with the exposure of their PHI, including medical information.

181.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and members of the California Class now face an increased risk of future harm.

182.    Pursuant to Cal. Civ. Code §§ 56.35 and 56.36, Plaintiff and each member of the California Class seek relief including actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorney fees, expenses, and costs. A recovery of nominal damages does not require that Plaintiff or members of the California Class have suffered or have been threatened with actual damages.

183.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56, *et seq*., Plaintiff and members of the California Class now face an increased risk of future harm.

184.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56, *et seq*., Plaintiff and members of the California Class have suffered injury and are entitled to damages in an amount to be proven at trial.

185.    Plaintiff and members of the California Class suffered a privacy injury by having their sensitive medical information disclosed, irrespective of whether they subsequently suffered identity fraud or incurred any mitigation damages. PHI has been recognized as private sensitive information in common law and federal and state statutory schemes and the disclosure of such information resulted in cognizable injury to Plaintiff and members of the California Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests

judgment against Defendant and that the Court grant the following:

A.     For an Order certifying the Nationwide Class and the California Class, and appointing Plaintiff and their Counsel to represent each such Class;

B.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.     For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.     prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.   requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII and PHI of Plaintiff and Class Members;

v.     prohibiting Defendant from maintaining the PII and PHI of Plaintiff and Class Members on a cloud-based database;

CLASS ACTION COMPLAINT                    40

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.   requiring Defendant to conduct regular database scanning and securing checks;

xi.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its

respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of damages, including actual, consequential, nominal, and statutory damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Date: April 19, 2022                     Respectfully Submitted,


                                         _/s/ Michael F. Ram /s/_

                                         MICHAEL F. RAM (SBN 104805)
                                         **MORGAN & MORGAN COMPLEX
                                         LITIGATION GROUP**
                                         711 Van Ness Avenue, Suite 500
                                         San Francisco, CA 94102
                                         Telephone:  (415) 358-6913
                                         Facsimile:   (415) 358-6923
                                         mram@ForThePeople.com

                                         JEAN SUTTON MARTIN
                                         (*Pro Hac Vice application forthcoming*)
                                         PATRICK BARTHLE
                                         (*Pro Hac Vice application forthcoming*)
                                         FRANCESCA KESTER
                                         (*Pro Hac Vice application forthcoming*)
                                         **MORGAN & MORGAN COMPLEX
                                         LITIGATION GROUP**
                                         201 N. Franklin Street, 7th Floor
                                         Tampa, Florida 33602
                                         Telephone: (813) 559-4908
                                         Facsimile: (813) 222-4795
                                         jeanmartin@ForThePeople.com
                                         pbarthle@ForThePeople.com
                                         fkester@ForThePeople.com


                                         *Attorneys for Plaintiff and the Putative
                                         Class*

CLASS ACTION COMPLAINT                   43